1

2

3                        UNITED STATES DISTRICT COURT

4                        NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8   SWI-CO CONSTRUCTION, INC., et al.,          No. C 10-3122 PJH

9            Plaintiffs,

10       v.                                       **ORDER GRANTING IN PART AND
                                                   DENYING IN PART DEFENDANT'S
11   AMCO INSURANCE COMPANY, et al.,               MOTION FOR SUMMARY JUDGMENT**

12           Defendants.
     _____/

13

14

15       The motion of defendant Nationwide Mutual Insurance Company for summary

16   judgment, or, in the alternative, for partial summary judgment, came on regularly for

17   hearing on June 22, 2011.  Plaintiffs Swi-Co Construction, Inc., Swi-Co Construction, and

18   Joe Swicegood appeared by their counsel Marc L. Sherman; defendant appeared by

19   counsel Julian Pardini.  Having read the parties' papers and carefully considered their

20   arguments and the relevant legal authority, and good cause appearing, the court hereby

21   GRANTS IN PART AND DENIES IN PART defendant's motion for summary judgment for

22   the reasons stated at the hearing and set forth below.

23                               **BACKGROUND**

24   A.   Construction Project

25       Plaintiff Swi-Co Construction ("Swi-Co") is a partnership entity between general

26   partners plaintiff Joseph Swicegood and nonparty Michael Cote.  In February 2004, Swi-Co

27   contracted with nonparties Pete and Caroline Kerston (the "homeowners") to construct their

28   home in Santa Rosa, California (the "project").  Declaration of Joe Swicegood ("Swicegood

United States District Court

For the Northern District of California

Decl.") ¶ 2.  Swi-Co entered a written standard form contract with the homeowners dated July 2, 2004 (the "contract").  Declaration of Stephen J. Liberatore ("Liberatore Decl.") ¶ 4 and Def. Ex. B.  The homeowners also hired an architect and civil engineers, who were not controlled or employed by Swi-Co, to determine the site of the house in relationship to a nearby creek.  Swicegood Decl. ¶ 2.

The contract required Swi-Co to "complete the Work described in the Contract Documents for the project."  Def. Ex. B. at SWI 00356.  The contract defined "Work" as "the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided by the Contractor to fulfill the Contractor's obligations."  Id. at SWI 00367.  The work described in those contract documents included, among other tasks, grading, rough and finish carpentry, flooring and building insulation.  Id. at SWI 00361-66.  Under the heading, "Final Completion and Final Payment," the contract provided that "[u]pon receipt of a final Application for Payment, the Owner will inspect the Work", and that "[f]inal payment shall not become due until the Contractor submits to the Owner releases and waivers of liens, and data establishing payment or satisfaction of obligations, such as receipts, claims, security interests or encumbrances arising out of the Contract."  Id. at SWI 00370.

Sometime during the course of construction of the project, water was discovered in the subfloor area of the house.  Def. Ex. D. at 59 (Deposition of Joe Swicegood).   Swi-Co took measures to dry out the area, thinking that it was caused by water from the plumbing system that had drained out into the subfloor area, but the water reappeared and it was later determined that the plumbing was not the source of the water.  Id. at 47, 59.  The water intrusion caused problems with the subfloor, joists, insulation, and the duct work for the mechanical ventilation system and heating system.  Id. at 55.

On October 4, 2005, when a hole was cut into the master bathroom subflooring to prepare for installation of a bathtub, mold was discovered on the underside of the subflooring.  Id. at 67-68; Swicegood Decl. ¶ 3.  Michael Cote, Swicegood's partner in Swi-Co, "immediately contacted Nationwide to make a claim" for the damage. Swicegood Decl.

2

United States District Court

For the Northern District of California

1    ¶ 4.  Cote gave a statement to Nationwide's claim representative, Nancy Klein, on October

2    14, 2005.  Def. Ex. G.

3         By letter dated November 11, 2005, Nationwide formally denied the claim, citing

4    various policy exclusions.  Declaration of Nancy Klein ("Klein Decl.") ¶ 4 and Def. Ex. H.

5    Swicegood spoke to Ms. Klein who emphasized that the claim was denied because it

6    included mold damage.  Swicegood Decl. ¶ 4.

7    B.    Insurance Policy

8         Defendant issued Commercial General Liability Policy No. ACP GLO 7880041365

9    (the "policy"), effective April 8, 2005 to April 8, 2006, to plaintiff Swi-Co Construction and to

10   Joseph Swicegood and Michael Cote as a partnership entity doing business as "Swi-Co

11   Construction."  See Declaration of Sandy Joslin ("Joslin Decl.") ¶ 2 and Def. Ex. A at

12   100006, 100011.  The policy renewed for the following policy year without material change.

13   Joslin Decl. ¶ 3.  The policy provided liability coverage in pertinent part as follows:

14   **SECTION I - COVERAGES**

15   **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

16   **1.    Insuring Agreement**

17           a.    We will pay those sums that the insured becomes legally obligated to
              pay as damages because of "bodily injury" or"property damage" to
18            which this insurance applies.  We will have the right and duty to defend
              any "suit" seeking those damages.  However, we will have no duty to
19            defend the insured against any "suit" seeking damages for "bodily
              injury" or "property damages" to which this insurance does not apply.
20   . . .

21   **SECTION V – DEFINITIONS**
     . . .
22
     13.    "Occurrence" means an accident, including continuous or repeated exposure
23          to substantially the same general harmful conditions.
     . . .
24
     16.    "Products-completed operations hazard":
25
            a.    Includes all "bodily injury" and "property damage" occurring away from
26                premises you own or rent and arising out of "your product" or "your
                  work" except:
27
                  1)    Products that are still in your physical possession; or
28

3

2)   Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

a)   When all the work called for in your contract has been completed.

b)   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

c)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

. . .

22.   "Your work":

a.   Means:

1)   Work or operations performed by you or on your behalf; and

2)   Materials, parts or equipment furnished in connection with such work or operations.

b.   Includes

1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

2)   The providing of or failure to provide warnings or instructions.

Def. Ex. A at 10013, 100025, 100027-28.

The policy carved out a variety of exclusions from coverage.  The three exclusions which are highlighted by the parties as relevant to the present motion are the j5, j6 exclusions contained in the policy, and the exclusion for fungi or bacteria contained in the endorsement to the policy:

**2.   Exclusions**
. . .

j.   **Damage to Property**

"Property damage" to:
. . .

4

5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraphs . . . 5) and 6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Def. Ex. A at 100016-17. The endorsement to the policy added the exclusion of fungi:

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.     The following exclusion is added to Paragraph 2., Exclusions of **Section I - Coverage A - Bodily Injury And Property Damage Liability**

     2.     **Exclusions**

     This insurance does not apply to:

     Fungi or Bacteria

     a.     "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi"or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, even, material or product contributed concurrently or in any sequence to such injury or damage.

     b.     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

     This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

. . .

C.     The following definition is added to the Definitions Section:

     "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts or released by fungi.

5

United States District Court

For the Northern District of California

1    Def. Ex. A at 100043.

2    C.      Homeowners' Action

3           In May 2006, the homeowners filed suit against Swi-Co Construction, Inc., as well as

4    the architect and engineers who were involved in the project.  The homeowners alleged

5    claims for breach of contract, breach of express warranty, breach of implied warranty,

6    negligence, and negligence per se against Swi-Co Construction, Inc.  Def. Ex. F.  The

7    homeowners alleged that the site had been improperly graded, water intrusion had

8    damaged subflooring and structural and framing members, and mold damaged

9    components of the home.  Id. at 200003-04.  The homeowners further alleged that they had

10   been damaged by an ongoing obligation to pay Swi-Co $8,000 for "overhead and

11   supervision" and by ongoing loss of the use of the residence.  Id. at 200005.

12          On June 6, 2006 Swi-Co tendered defense of the homeowners' action to

13   Nationwide.  Swicegood Decl. ¶ 5.  The claim was then assigned to litigation consultant

14   Greer Malone to determine whether Nationwide had any coverage obligation to defend Swi-

15   Co.  Declaration of Greer Malone ("Malone Decl.") ¶ 2.  Ms. Malone sought advice from in-

16   house counsel with respect to Swi-Co's tender of defense.  Id. ¶ 3.  Barbara Ochsner, one

17   of Nationwide's in-house attorneys, directed Ms. Malone to contact Michael Cote to learn

18   whether the construction project had been completed.  Id. ¶ 4 and Def. Ex. J.  Ms. Malone

19   spoke to Mr. Cote and noted in her file diary that Mr. Cote told her that "the construction on

20   the house is not complete as the floor coverings have not been installed & cannot be

21   installed until the mold problem is resolved.  Id. ¶ 5 and Def. Ex. K.  Ms. Malone reported

22   to Ms. Ochsner about her telephone conversation with Mr. Cote, and Ms. Ochsner

23   recommended that Nationwide deny coverage.  Id. ¶ 6 and Def. Ex. L; Declaration of

24   Barbara L. Ochsner ("Ochsner Decl.") ¶ 6.

25          On August 18, 2006, Ms. Malone sent a denial letter to Joe Swicegood of Swi-Co,

26   declining Swi-Co's tender of defense in the homeowners' lawsuit.  Malone Decl. ¶ 7 and

27   Def. Ex. M.  Mr. Swicegood subsequently spoke to Ms. Malone and informed her that more

28   than mold was involved in the claims: the damage included saturation to insulation and

6

United States District Court

For the Northern District of California

1   degradation of pipes, HVAC and other duct work that needed to be replaced.  Swicegood

2   Decl. ¶ 7.  Mr. Swicegood contends that no Swi-Co operations were occurring on the

3   subfloor, ducts, piping and other locations on which water damage was alleged.  Id.

4        Swi-Co entered a settlement with the homeowners after paying over $70,000 of

5   company funds to defend the action.  Id. ¶ 8.  As part of the settlement, Swi-Co paid

6   remediation costs, cancelled a $101,000 promissory note owed by the homeowners,

7   waived over $100,000 in unpaid invoices and interest, and paid its own attorneys' fees and

8   costs.  Id.  The Swi-Co partnership dissolved by the time of the settlement.  Id.

9   D.    Procedural History

10       Plaintiffs filed this action against defendant Amco in the Superior Court for Sonoma

11  County on June 21, 2010.  Defendant Nationwide removed the action to this court on July

12  16, 2010.  On August 30, 2010, plaintiffs filed a first amended complaint ("FAC") which

13  alleges two causes of action against defendants: (1) breach of contract for failure to defend

14  Swi-Co in the homeowners' action under the policy; and (2) breach of the implied covenant

15  of good faith and fair dealing.  See FAC.  Each of these causes of action revolves around

16  the fundamental question whether the homeowners' claims were covered by the policy.

17       The court held the initial case management conference on December 9, 2010.  The

18  parties stipulate that Nationwide is the proper defendant in this action.  Doc. no. 22.

19       On April 25, 2011, Nationwide filed the instant motion seeking summary judgment on

20  both claims, or, in the alternative, partial summary judgment.

21                              **DISCUSSION**

22  A.    Legal Standard

23       Summary judgment shall be granted if "the pleadings, depositions, answers to

24  interrogatories, and admissions on file, together with the affidavits, if any, show that there is

25  no genuine issue as to any material fact and that the moving party is entitled to judgment

26  as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of

27  the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to

28  a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

United States District Court

For the Northern District of California

1   verdict for the nonmoving party.  Id.  The court must view the facts in the light most

2   favorable to the non-moving party and give it the benefit of all reasonable inferences to be

3   drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

4   587 (1986).

5         The party moving for summary judgment bears the initial burden of demonstrating

6   the absence of a genuine issue of fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317,

7   323 (1986).  When the moving party will have the burden of proof on an issue at trial, it

8   must affirmatively demonstrate that no reasonable trier of fact would find other than for the

9   moving party.  On an issue for which the nonmoving party will have the burden of proof at

10  trial, the moving party need only point out "that there is an absence of evidence to support

11  the nonmoving party's case."  Id.  Once the moving party satisfies its initial burden, the

12  nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set

13  forth specific facts showing that there is a genuine issue for trial."  FRCP 56(e).  If the

14  nonmoving party fails to make this showing, "the moving party is entitled to judgment as a

15  matter of law."  Celotex, 477 U.S. at 323.

16  B.    Analysis

17        Nationwide moves for summary judgment against plaintiffs on all claims on the

18  ground that Nationwide owed no duty to defend.  In the alternative, Nationwide seeks

19  partial summary judgment on the following grounds: that Nationwide did not breach the

20  insurance contract, and/or that Nationwide did not breach the implied covenant of good

21  faith and fair dealing, and/or that plaintiffs are not entitled to recover punitive damages

22  against Nationwide.

23        1.    Governing Interpretation Principles

24        In California, interpretation of an insurance policy is a question of law and follows the

25  general rules of contract interpretation.  See MacKinnon v. Truck Ins. Exch., 31 Cal. 4th

26  635, 647 (2003).  Contract interpretation, for its part, is based on the premise that it must

27  give effect to the mutual intention of the parties.  Id.  This intent, if possible, should be

28  inferred solely from the written provisions of the contract, as interpreted in their "ordinary

United States District Court
For the Northern District of California

and popular sense." Id. at 648.  The exception to this "ordinary and popular" rule, is where the parties have used a given term in a "technical sense" or where a "special meaning" is given to a term "by usage." Id.  In that case, the term should be read with reference to that special meaning or technical sense.

With respect to extrinsic evidence, it may be admitted to determine proper interpretation where the relevant provisions of an insurance policy are ambiguous.  See Palacin v. Allstate Ins. Co., 119 Cal. App. 4th 855, 862.  A policy provision is ambiguous, in turn, when it is susceptible of two or more reasonable constructions.  Id.

The duty to defend has been explained by the California Supreme Court:

> Standard comprehensive or commercial general liability insurance policies provide, in pertinent part, that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for any covered claim. They also provide that the insurer has a duty to defend the insured in any action brought against the insured seeking damages for any covered claim. . . .
>
> [T]he insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed.  It entails the rendering of a service, viz., the mounting and funding of a defense in order to avoid or at least minimize liability.  It arises as soon as tender is made.  It is discharged when the action is concluded.  It may be extinguished earlier, if it is shown that no claim can in fact be covered. . . .
>
> Thus, in an action wherein all the claims are at least potentially covered, the insurer has a duty to defend.

Buss v. Superior Court, 16 Cal.4th 35, 45-46 (1997) (citations omitted).

Under California law, the duty to defend arises whenever an action alleges any claim that "potentially" or "possibly" could be covered by the policy in question.  Id.  A duty to defend can only be excused when the action "can by no conceivable theory raise a single issue which could bring it within the policy coverage." Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993).  Any doubts as to whether the insurer has a duty to defend must be resolved in the insured's favor.  George F. Hillenbrand, Inc. v. Insurance Co. of North America, 104 Cal. App. 4th 784, 800-01 (2002).

**United States District Court**
For the Northern District of California

1      In a "mixed" action involving covered and noncovered claims, the insurer has a duty

2  to defend the whole action. <u>Buss</u>, 16 Cal. 4th at 48-49. "To defend meaningfully, the

3  insurer must defend immediately. To defend immediately, it must defend entirely.  It cannot

4  parse the claims, dividing those that are at least potentially covered from those that are

5  not." <u>Id</u>. (citation omitted). "As to the claims that are not even potentially covered,

6  however, the insurer may indeed seek reimbursement for defense costs." <u>Id</u>. at 50.

7      To determine whether claims are potentially covered, the policy language has to first

8  be construed.  Under general principles of interpretation, policy exclusions are to be strictly

9  construed, while exceptions to exclusions are to be broadly construed in favor of the

10  insured. <u>Arenson v. National Auto. & Cas. Ins. Co.</u>, 45 Cal. 2d 81, 83 (1955).  In addition,

11  to the extent any language in the policy is ambiguous, the ambiguous language must be

12  construed in favor of the insured. <u>Id</u>.  <u>See also</u> <u>Minkler v. Safeco Ins. Co.</u>, 49 Cal. 4th 315,

13  322 (2010) ("The 'tie-breaker' rule of construction against the insurer stems from the

14  recognition that the insurer generally drafted the policy and received premiums to provide

15  the agreed protection.")

16      2.  <u>Coverage</u>

17      With these principles in mind, the first issue to be decided is whether the policy, in its

18  affirmative coverage provisions (i.e., the provisions covering property damage liability),

19  covers the claims asserted in the homeowners' complaint.  Under California law, coverage

20  must be first determined with respect to the affirmative insuring provisions of the policy, not

21  the exclusions. <u>See, e.g., Waller v. Truck Ins. Exch.</u>, 11 Cal. 4th 1, 16 (1995) ("Before

22  'even considering exclusions, a court must examine the coverage provisions to determine

23  whether a claim falls within [the policy terms].'").

24      Coverage is normally determined by comparing the allegations of the third party

25  complaint with the coverage language of the policy. <u>See, e.g., Palmer v. Truck Ins. Exch.</u>,

26  21 Cal. 4th 1109, 1115-16 (1999).  Accordingly, here the court must compare the coverage

27  clauses of the policy with the allegations of the homeowners' complaint, summarized as

28  follows:

1   •    Each defendant was the agent of each other defendant.  Def. Ex. F. ¶ 11.

2   •    Swi-Co breached its contract by "constructing the entire residence

3        approximately 10 feet off from the designed and staked out location; grading

4        the driveway and other areas around the residence approximately two feet

5        higher than called for under the plans and specifications; grading the

6        driveway and other areas sloped toward the residence rather than being

7        sloped away from the residence as called for under the plans and

8        specifications; and constructing the residence in the physical area designated

9        for the septic system setback.  Id. ¶ 14.

10  •    As a result of the deviation from the approved plans and specifications and

11       other material breaches of the contract by the defendants, the residence

12       suffers from water intrusion throughout the crawl space beneath the home,

13       water damage to sub-flooring, structural members and framing members,

14       significant mold growth on structural framing as well as other components of

15       the home.  Id.

16  •    The negligence of Swi-Co, Farrell-Faber (the architect), LaFranchi (civil

17       engineering corporation), PJC Associates (geotechnical engineering

18       corporation), Johnson-Dubois (structural engineering firm), and Kelly Johnson

19       (individual structural engineer) caused damages including expenses for mold

20       remediation, correction of grading defects, relocation of septic field, inspecting

21       and testing.  Id. ¶¶ 36-38.

22       The policy covered "property damage" to the property of others caused by Swi-Co's

23  work, unless that damage fell within an exclusion.  Nationwide concedes that on its face,

24  the allegations of the homeowners' complaint alleging damage to their house are sufficient

25  to bring Swi-Co's claim within the scope of the policy's insuring agreement.  Doc. no. 36 at

26  4.  The parties dispute whether the homeowners' claims fell within the exclusions to the

27  policy coverage.

28

United States District Court

For the Northern District of California

1    3.    Exclusions

2        California law recognizes "the fundamental principle that an insurer cannot escape

3   its basic duty to insure by means of an exclusionary clause that is unclear." State Farm

4   Mut. Auto. Ins. Co. v. Jacober, 10 Cal. 3d 193, 201 (1973).  An insurer must state "'any

5   exception to the performance of the basic underlying obligation . . . [so] as clearly to

6   apprise the insured of its effect.'"  Id. (quoting Gray v. Zurich Insurance Co., 65 Cal. 2d 263,

7   269 (1966)).  Exclusionary language must be "'conspicuous, plain and clear.'"  Id. at 202

8   (quoting Steven v. Fidelity & Casualty Co., 58 Cal. 2d 862, 878 (1962)) (emphasis added in

9   original).

10       Nationwide contends that the homeowners' claims fell within three different

11  exclusions from the policy: damage arising from ongoing operations ("j5"); property that

12  must be restored, repaired or replaced ("j6"); and mold.

13            a.    Exclusion j5 for ongoing operations

14       Under exclusion j5, the policy excludes property damage arising out of the insured's

15  ongoing operations: "This insurance does not apply to . . . [t]hat particular part of real

16  property on which you or any contractors or subcontractors working directly or indirectly on

17  your behalf are performing operations, if the 'property damage' arises out of those

18  operations."  Def. Ex. A at 100014, 100016-17.

19       Nationwide declined coverage under this exclusion based on its conclusion that the

20  problems stemming from the water intrusion and development of mold occurred while Swi-

21  Co and/or its subcontractors were performing operations.  Nationwide concluded that

22  because the project was not completed, Swi-Co's operations were ongoing and therefore

23  excluded from coverage under j5.  Def. Ex. M at 6 ("These exclusions [j5 and j6] apply to

24  the damages claimed in this suit, because the plaintiffs' home was 'your work,' and the

25  alleged water intrusion and/or mold damage occurred before your operations were

26  completed.")

27       There is no genuine dispute that Swi-Co had not completed the construction project

28  to build the home at the time it discovered the water intrusion and mold.  The notice of

12

United States District Court
For the Northern District of California

1  completion filed with the county recorder's office indicates that the project was completed

2  on September 8, 2006.  Def. Ex. C.  The parties dispute whether as a matter of law j5

3  should be interpreted to exclude coverage for a general contractor for any project that has

4  not been completed in full.  Nationwide contends that because Swi-Co was the general

5  contractor on the project, "**all of the work at the project** is its work product."  Doc. no. 23

6  at 12 (emphasis in original).  Plaintiffs, however, argue that the j5 exclusion involves only

7  part of real property ("[t]hat particular part") that is damaged when an insured or its

8  contractor or subcontractor is contemporaneously working on it.

9       Following state court decisions construing exclusionary language that is similar to

10  language in the j5 exclusion at issue here, the court determines that the j5 exclusion is

11  ambiguous as to whether the work excluded under j5 incorporates the entire project or only

12  a part or component of the project.  See Eichler Homes, Inc. v. Underwriters at Lloyd's,

13  London, 238 Cal.App.2d 532 (1965); Blackfield v. Underwriters at Lloyd's, London, 245

14  Cal.App.2d 271 (1966); Owens Pacific Marine, Inc. v. Insurance Co. of North America, 12

15  Cal.App.3d 661 (1970).  In Eichler, several homeowners sued the builder for damages

16  resulting from the rupture and leakage of the heating systems installed in the concrete

17  floors of the homes.  The builder sued its insurer which had denied coverage and defense

18  of the homeowners' actions.  The court held that the policy exclusion "[f]or damage to **that**

19  **particular part** of any property upon which the Assured is or has been working caused by

20  the faulty manner in which the work has been performed" was limited to damages related to

21  the cost of repair and replacement of the defective heating system.  238 Cal. App. 2d at

22  534, 538 (emphasis added).  The Eichler court held that insurer had a duty to defend the

23  builder against the third party claims for damage to the home allegedly caused by a

24  defective heating system which "developed numerous leaks and large portions of the floor

25  had to be torn up in order to repair the same".  Id. at 537 (emphasis added in original).

26       In Blackfield, homeowners sued the builders and sellers of a tract of homes for

27  defective construction.  The insurer filed a declaratory relief action to determine its

28  obligation to defend the builder.  The court held that the policy exclusion "[f]or damage to

13

United States District Court

For the Northern District of California

1    **that particular part** of any property upon which the Assured is or has been working

2    caused by the faulty manner in which the work has been performed" does not exclude

3    liability for damages <u>unrelated</u> to the cost of such repair or replacement.  245 Cal. App. 2d

4    at 275-76 (emphasis in bold added).  <u>Blackfield</u> held that the insurer's attempt to extend the

5    exclusion "to damage to the whole house, including the nondefective parts thereof, on the

6    theory that it is property upon which the [builders] had worked" was "an unreasonable

7    interpretation of the provision."  <u>Id</u>. at 276.

8        In <u>Owens Pacific</u>, the insured boat seller sold a boat installed with a water heater

9    which exploded.  The customer sued the insured boat seller, and the insurer disclaimed

10   coverage under the insured's comprehensive liability policy and refused to defend the

11   lawsuit.   After judgment was entered against the insured, he filed a declaratory relief action

12   against the insurer.  The insured incurred $2,857.52 in defense costs and $15,922.11 in

13   damages; the record does not disclose the basis of liability.  The insurer argued that the

14   exclusion clause, for "injury to or destruction of any goods [or] products . . . sold, handled or

15   distributed . . . by the named insured, or work completed by or for the named insured, out

16   of which the occurrence arises," would apply to everything which the insured sold or

17   distributed.  12 Cal. App. 3d at 666.  The court of appeal affirmed judgment for the insured

18   boat seller, holding that the exclusion was limited to the faulty water heater and did not

19   apply to the entire boat in which the heater was installed.  Following <u>Eichler</u> and <u>Blackfield</u>,

20   the court held that the exclusion clause "is reasonably susceptible of the interpretation that

21   the electric hot water heater [rather than the boat as a whole] was the 'product' out of which

22   the occurrence arose."  <u>Id</u>. at 667-68.

23       Nationwide relies on <u>Western Employers Ins. Co. v. Arciero & Sons, Inc.</u>, 146 Cal.

24   App. 3d 1027 (1983)  to argue that the j5 exclusion should be construed to deny coverage

25   to a general contractor for damage to the unfinished project because the entire project is

26   considered Swi-Co's work.  In <u>Arciero</u>, the court affirmed summary judgment for the insurer

27   on the ground that the damage to the condominium units, slope and wall were outside the

28   coverage of Arciero's policy by reason of an exclusion for "property damage to work

United States District Court

For the Northern District of California

1   performed by or on behalf of the named insured arising out of the work or any portion

2   thereof . . . ."  Nationwide contends that the policy exclusion in <u>Arciero</u> was similar to the j5

3   exclusion at issue here because it made no reference to faulty or defective work, unlike the

4   exclusions at issue in <u>Blackfield</u> and <u>Owens Pacific</u>.  Doc. no. 49 at 2-3.  However, the

5   <u>Arciero</u> court did not distinguish the exclusions at issue in those earlier cases on the ground

6   that they referred to faulty work, but on the ground that those exclusions were ambiguous

7   as to "whether the 'work' excluded was the entire project, i.e., the home or the boat, or only

8   the component part of the project that failed, i.e,., the foundation or the electric heater."

9   146 Cal. App. 3d at 1031.  In <u>Arciero</u>, the court recognized that the earlier decisions in

10  <u>Eichler</u> and <u>Blackfield</u>, which construed exclusionary language concerning "damage to that

11  particular part" that is similar to the language in the j5 exclusion at issue here, only

12  excluded damages to the failed work itself, not to the entire project.  146 Cal. App. 3d at

13  1030-31 (citing <u>Eichler</u>, 238 Cal.App.2d 532; <u>Blackfield</u>, 245 Cal.App.2d at 273, 276 n.1).

14  By contrast, the work product exclusion at issue in <u>Arciero</u>, excluding coverage for property

15  damage arising out of "the work or any portion thereof," was drafted to eliminate the

16  ambiguity of the earlier exclusionary provisions to make clear that it applied to the insured's

17  entire work product.  <u>Id</u>. at 1031.  The j5 exclusion at issue here does not contain such

18  unambiguous exclusionary language.

19      Although <u>Eichler</u>, <u>Blackfield</u> and <u>Owens Pacific</u> do not offer thorough analysis of the

20  question whether the whole project is considered the work of the general contractor, these

21  state court opinions recognized that the exclusionary language created an ambiguity as to

22  whether the work excluded was the entire project or only the component part of the project

23  that failed.  Because any ambiguity must be resolved against the insurer, the court held in

24  each of those cases that the work product exclusion excluded only damages to the failed

25  work itself, not to the entire project.  <u>See</u> <u>Arciero</u>, 146 Cal. App. 3d at 1031-31.  Under

26  <u>Eichler</u>, <u>Blackfield</u> and <u>Owen</u>, Swi-Co's proposed construction of the j5 exclusion, to

27  exclude only damage to a particular part of construction on which the contractor is

28  performing operations and not to the whole house until the entire project is complete, is

15

United States District Court

For the Northern District of California

1   reasonable and supported by the ordinary and plain meaning of the exclusionary language.

2   Construing the ambiguous language of the j5 exclusion against the insurer, the court

3   determines that the j5 exclusion does not apply here to the entire construction project.

4       With respect to Nationwide's motion for summary judgment on the ground that it

5   owed no duty to defend pursuant to the j5 exclusion, the motion is DENIED.  Pursuant to

6   Civil Local Rule 56-3, the court hereby specifies that the court's interpretation of the j5

7   exclusion is deemed established for purposes of trial of this case.

8              b.    Exclusion j6 for "restored, repaired or replaced" Property

9       Exclusion j6 excludes coverage for "[t]hat particular part of any property that must be

10  restored, repaired or replaced because 'your work' was incorrectly performed on it."  Def.

11  Ex. A at 100017.  The parties dispute whether plaintiffs' vicarious liability for the alleged

12  negligence by the architect and engineers hired by the homeowners is covered by "your

13  work."  Nationwide contends that all of the work on the project is considered the work of

14  Swi-Co as the general contractor.  As discussed above with respect to the j5 exclusion,

15  Nationwide fails to show that such a broad construction of "your work" to encompass the

16  entire project is the only reasonable one.  The court therefore finds that the j6 exclusion

17  does not apply to the work of others, such as architects and engineers, who are not

18  subcontractors of Swi-Co.

19      Nationwide argues that the allegations of the homeowners' complaint establish that

20  certain portions of the project had to be restored, repaired or replaced because Swi-Co's

21  work was allegedly incorrectly performed.  Doc. no. 23 at 13.  The question whether Swi-

22  Co's work was incorrectly performed and caused the property damage presents a disputed

23  issue of fact.  Even Nationwide's in-house attorney admitted at deposition that "assuming

24  the grading and siting were not the insured's work, then [j6] may or may not apply."

25  Declaration of Mark L. Sherman ("Sherman Decl."), Ex. 2 (Ochsner Depo.) at 55.

26      Swi-Co identifies another disputed factual issue over which particular part of the

27  property, if any, had to be restored, repaired or replaced.  Doc. no. 33 at 19.  Swi-Co

28  contends that the homeowners' complaint does not allege that Swi-Co performed incorrect

United States District Court

For the Northern District of California

1    operations on the components of the house that needed replacement, including saturated

2    insulation, parts of the subfloor, pipes, HVAC and other duct work.  Id.  Nationwide does

3    not respond to Swi-Co's argument that this issue presents a factual dispute.

4           The court determines that the question whether Swi-Co, the architects or the

5    engineers incorrectly performed their work raises genuine issues of disputed fact as to

6    whether the j6 exclusion applies to the claimed damage.  Nationwide's motion for summary

7    judgment on the ground that it owed no duty to defend pursuant to the j6 exclusion is

8    therefore DENIED.  Pursuant to Civil Local Rule 56-3, the court hereby specifies that the

9    court's interpretation of the j6 exclusion not to apply to the work of others who are not Swi-

10   Co's subcontractors is deemed established for purposes of trial on the remaining question

11   of whether the j6 exclusion applies to the claimed damage.

12                          c.    Exclusion for Mold

13          As Nationwide has demonstrated, the policy plainly and clearly excludes damage

14   arising from the presence of mold: "Any loss, cost or expenses arising out of the abating,

15   testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing,

16   remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi"

17   or bacteria, by any insured or by any other person or entity."  Def. Ex. A at 100043.

18          Plaintiffs have demonstrated, however, that the homeowners' claims against Swi-Co

19   alleged damage other than mold, presenting a factual dispute as to whether any part of the

20   claim against Swi-Co is potentially covered, triggering Nationwide's duty to defend.  See

21   doc. no. 33 at 21.  In reply, Nationwide does not dispute plaintiffs' contention that the

22   homeowners alleged other non-mold damage.  Nationwide's litigation consultant also

23   acknowledged at deposition that the mold exclusion would not apply to the allegations of

24   non-mold damage.  Sherman Decl., Ex. 3 (Malone Depo.) at 34 ("The mold exclusion only

25   applies to allegations relating to mold.").  Nationwide's motion for summary judgment is

26   therefore DENIED with respect to the plaintiff's breach of contract claim based on the duty

27   to defend against claims for non-mold damage.

28

                                            17

**United States District Court**
For the Northern District of California

1        4.      Motion for Partial Summary Judgment

2        Nationwide seeks partial summary judgment as to plaintiffs' claim for breach of

3    contract, breach of the implied covenant of good faith and fair dealing and prayer for

4    punitive damages.  Nationwide's motion for summary judgment as to the claim for breach

5    of contract is DENIED, as fully set forth above.  With respect to the other claim and prayer

6    for relief, Nationwide's motion for summary judgment is GRANTED.

7        A claim for breach of implied covenant of good faith and fair dealing for denial of

8    liability coverage requires the following two elements:  "(1) benefits due under the policy

9    must have been withheld and (2) the reason for withholding benefits must have been

10   unreasonable or without proper cause."  Love v. Fire Ins. Exchange, 221 Cal. App. 3d

11   1136, 1151 (1990).  "Where benefits are withheld for proper cause, there is no breach of

12   the implied covenant."  Id. at 1151.  Although the court has construed the ambiguity of the

13   exclusionary provisions in favor of the insured, this ruling does not take the claim out of the

14   reach of the genuine dispute doctrine.  See Trishan Air, Inc. v. Federal Ins. Co., 635 F.3d

15   422, 434 (9th Cir. 2011) ("An insurer denying or delaying the payment of policy benefits due

16   to the existence of a genuine dispute with its insured as to the existence of coverage

17   liability or the amount of the insured's coverage claim is not liable in bad faith even though

18   it might be liable for breach of contract.") (citation and quotation marks omitted).  In light of

19   the genuine dispute over coverage and the applicability of the exclusions, plaintiffs fail to

20   demonstrate bad faith to support a claim for breach of the implied covenant.  Nationwide's

21   motion for partial summary judgment on this claim is therefore GRANTED.

22       With respect to plaintiffs' prayer for punitive damages, plaintiffs must prove by clear

23   and convincing evidence that Nationwide has been guilty of malice, fraud, or oppression.

24   Cal. Civ.Code § 3294.  "Clear and convincing evidence" is evidence that is "so clear as to

25   leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of

26   every reasonable mind."  In re Angelia P., 28 Cal. 3d 908, 919 (1981). The law does not

27   favor punitive damages, and they should be granted with caution.  Given the genuine

28   dispute over coverage, plaintiffs fail to demonstrate that Nationwide denied coverage

1   maliciously, fraudulently or oppressively.  Nationwide's motion for partial summary

2   judgment on the prayer for punitive damages is hereby GRANTED.

3                                      **CONCLUSION**

4           For the reasons set forth above, defendant's motion for summary judgment is

5   DENIED with respect to the claim for breach of contract and GRANTED with respect to the

6   claim for breach of implied covenant of good faith and fair dealing and prayer for punitive

7   damages.

8           This matter is REFERRED back to Magistrate Judge Zimmerman for a further

9   settlement conference.  The parties shall contact Magistrate Judge Zimmerman's chambers

10  for the next available date for conference.  If the matter does not settle, the parties shall

11  appear for trial setting conference on January 12, 2012 at 2:00 p.m.

12  **IT IS SO ORDERED.**

13

14  Dated: September 19, 2011                      _____

15                                                 PHYLLIS J. HAMILTON
                                                   United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California