UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SWI-CO CONSTRUCTION, INC., et al.,

    Plaintiffs,

    v.

AMCO INSURANCE COMPANY, et al.,

    Defendants.
_____/

No. C 10-3122 PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The motion of defendant Nationwide Mutual Insurance Company for summary judgment, or, in the alternative, for partial summary judgment, came on regularly for hearing on June 22, 2011. Plaintiffs Swi-Co Construction, Inc., Swi-Co Construction, and Joe Swicegood appeared by their counsel Marc L. Sherman; defendant appeared by counsel Julian Pardini. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS IN PART AND DENIES IN PART defendant's motion for summary judgment for the reasons stated at the hearing and set forth below.

## **BACKGROUND**

A.    Construction Project

Plaintiff Swi-Co Construction ("Swi-Co") is a partnership entity between general partners plaintiff Joseph Swicegood and nonparty Michael Cote. In February 2004, Swi-Co contracted with nonparties Pete and Caroline Kerston (the "homeowners") to construct their home in Santa Rosa, California (the "project"). Declaration of Joe Swicegood ("Swicegood

Decl.") ¶ 2. Swi-Co entered a written standard form contract with the homeowners dated July 2, 2004 (the "contract"). Declaration of Stephen J. Liberatore ("Liberatore Decl.") ¶ 4 and Def. Ex. B. The homeowners also hired an architect and civil engineers, who were not controlled or employed by Swi-Co, to determine the site of the house in relationship to a nearby creek. Swicegood Decl. ¶ 2.

The contract required Swi-Co to "complete the Work described in the Contract Documents for the project." Def. Ex. B. at SWI 00356. The contract defined "Work" as "the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided by the Contractor to fulfill the Contractor's obligations." Id. at SWI 00367. The work described in those contract documents included, among other tasks, grading, rough and finish carpentry, flooring and building insulation. Id. at SWI 00361-66. Under the heading, "Final Completion and Final Payment," the contract provided that "[u]pon receipt of a final Application for Payment, the Owner will inspect the Work", and that "[f]inal payment shall not become due until the Contractor submits to the Owner releases and waivers of liens, and data establishing payment or satisfaction of obligations, such as receipts, claims, security interests or encumbrances arising out of the Contract." Id. at SWI 00370.

Sometime during the course of construction of the project, water was discovered in the subfloor area of the house. Def. Ex. D. at 59 (Deposition of Joe Swicegood). Swi-Co took measures to dry out the area, thinking that it was caused by water from the plumbing system that had drained out into the subfloor area, but the water reappeared and it was later determined that the plumbing was not the source of the water. Id. at 47, 59. The water intrusion caused problems with the subfloor, joists, insulation, and the duct work for the mechanical ventilation system and heating system. Id. at 55.

On October 4, 2005, when a hole was cut into the master bathroom subflooring to prepare for installation of a bathtub, mold was discovered on the underside of the subflooring. Id. at 67-68; Swicegood Decl. ¶ 3. Michael Cote, Swicegood's partner in Swi-Co, "immediately contacted Nationwide to make a claim" for the damage. Swicegood Decl.

2

¶ 4.  Cote gave a statement to Nationwide's claim representative, Nancy Klein, on October 14, 2005.  Def. Ex. G.

By letter dated November 11, 2005, Nationwide formally denied the claim, citing various policy exclusions.  Declaration of Nancy Klein ("Klein Decl.") ¶ 4 and Def. Ex. H.  Swicegood spoke to Ms. Klein who emphasized that the claim was denied because it included mold damage.  Swicegood Decl. ¶ 4.

B.  Insurance Policy

Defendant issued Commercial General Liability Policy No. ACP GLO 7880041365 (the "policy"), effective April 8, 2005 to April 8, 2006, to plaintiff Swi-Co Construction and to Joseph Swicegood and Michael Cote as a partnership entity doing business as "Swi-Co Construction."  See Declaration of Sandy Joslin ("Joslin Decl.") ¶ 2 and Def. Ex. A at 100006, 100011.  The policy renewed for the following policy year without material change.  Joslin Decl. ¶ 3.  The policy provided liability coverage in pertinent part as follows:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply.

. . .

**SECTION V – DEFINITIONS**

. . .

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

16.  "Products-completed operations hazard":

    a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        1)  Products that are still in your physical possession; or

3

        2)     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            a)     When all the work called for in your contract has been completed.

            b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

. . .

22.    "Your work":

      a.    Means:

           1)     Work or operations performed by you or on your behalf; and

           2)     Materials, parts or equipment furnished in connection with such work or operations.

      b.    Includes

           1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

           2)     The providing of or failure to provide warnings or instructions.

Def. Ex. A at 10013, 100025, 100027-28.

     The policy carved out a variety of exclusions from coverage. The three exclusions which are highlighted by the parties as relevant to the present motion are the j5, j6 exclusions contained in the policy, and the exclusion for fungi or bacteria contained in the endorsement to the policy:

**2.**    **Exclusions**

. . .

    j.    **Damage to Property**

        "Property damage" to:

        . . .

4

> 5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> 6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> . . .
>
> Paragraphs . . . 5) and 6) of this exclusion do not apply to liability assumed under a sidetrack agreement.
>
> Paragraph 6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Def. Ex. A at 100016-17. The endorsement to the policy added the exclusion of fungi:

**FUNGI OR BACTERIA EXCLUSION**

> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> A. The following exclusion is added to Paragraph 2., Exclusions of **Section I - Coverage A - Bodily Injury And Property Damage Liability**
>
>   2. **Exclusions**
>
>      This insurance does not apply to:
>
>      Fungi or Bacteria
>
>      a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi"or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, even, material or product contributed concurrently or in any sequence to such injury or damage.
>
>      b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.
>
>      This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.
>
> . . .
>
> C. The following definition is added to the Definitions Section:
>
>    "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts or released by fungi.

5

Def. Ex. A at 100043.

C.    Homeowners' Action

In May 2006, the homeowners filed suit against Swi-Co Construction, Inc., as well as the architect and engineers who were involved in the project. The homeowners alleged claims for breach of contract, breach of express warranty, breach of implied warranty, negligence, and negligence per se against Swi-Co Construction, Inc. Def. Ex. F. The homeowners alleged that the site had been improperly graded, water intrusion had damaged subflooring and structural and framing members, and mold damaged components of the home. Id. at 200003-04. The homeowners further alleged that they had been damaged by an ongoing obligation to pay Swi-Co $8,000 for "overhead and supervision" and by ongoing loss of the use of the residence. Id. at 200005.

On June 6, 2006 Swi-Co tendered defense of the homeowners' action to Nationwide. Swicegood Decl. ¶ 5. The claim was then assigned to litigation consultant Greer Malone to determine whether Nationwide had any coverage obligation to defend Swi-Co. Declaration of Greer Malone ("Malone Decl.") ¶ 2. Ms. Malone sought advice from in-house counsel with respect to Swi-Co's tender of defense. Id. ¶ 3. Barbara Ochsner, one of Nationwide's in-house attorneys, directed Ms. Malone to contact Michael Cote to learn whether the construction project had been completed. Id. ¶ 4 and Def. Ex. J. Ms. Malone spoke to Mr. Cote and noted in her file diary that Mr. Cote told her that "the construction on the house is not complete as the floor coverings have not been installed & cannot be installed until the mold problem is resolved. Id. ¶ 5 and Def. Ex. K. Ms. Malone reported to Ms. Ochsner about her telephone conversation with Mr. Cote, and Ms. Ochsner recommended that Nationwide deny coverage. Id. ¶ 6 and Def. Ex. L; Declaration of Barbara L. Ochsner ("Ochsner Decl.") ¶ 6.

On August 18, 2006, Ms. Malone sent a denial letter to Joe Swicegood of Swi-Co, declining Swi-Co's tender of defense in the homeowners' lawsuit. Malone Decl. ¶ 7 and Def. Ex. M. Mr. Swicegood subsequently spoke to Ms. Malone and informed her that more than mold was involved in the claims: the damage included saturation to insulation and

6

1  degradation of pipes, HVAC and other duct work that needed to be replaced.  Swicegood
2  Decl. ¶ 7.  Mr. Swicegood contends that no Swi-Co operations were occurring on the
3  subfloor, ducts, piping and other locations on which water damage was alleged.  Id.
4      Swi-Co entered a settlement with the homeowners after paying over $70,000 of
5  company funds to defend the action.  Id. ¶ 8.  As part of the settlement, Swi-Co paid
6  remediation costs, cancelled a $101,000 promissory note owed by the homeowners,
7  waived over $100,000 in unpaid invoices and interest, and paid its own attorneys' fees and
8  costs.  Id.  The Swi-Co partnership dissolved by the time of the settlement.  Id.
9  D.    Procedural History
10     Plaintiffs filed this action against defendant Amco in the Superior Court for Sonoma
11 County on June 21, 2010.  Defendant Nationwide removed the action to this court on July
12 16, 2010.  On August 30, 2010, plaintiffs filed a first amended complaint ("FAC") which
13 alleges two causes of action against defendants: (1) breach of contract for failure to defend
14 Swi-Co in the homeowners' action under the policy; and (2) breach of the implied covenant
15 of good faith and fair dealing.  See FAC.  Each of these causes of action revolves around
16 the fundamental question whether the homeowners' claims were covered by the policy.
17     The court held the initial case management conference on December 9, 2010.  The
18 parties stipulate that Nationwide is the proper defendant in this action.  Doc. no. 22.
19     On April 25, 2011, Nationwide filed the instant motion seeking summary judgment on
20 both claims, or, in the alternative, partial summary judgment.

## DISCUSSION

A.    Legal Standard

    Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

7

verdict for the nonmoving party. Id.  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact would find other than for the moving party.  On an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.  Once the moving party satisfies its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  FRCP 56(e).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

B.   Analysis

Nationwide moves for summary judgment against plaintiffs on all claims on the ground that Nationwide owed no duty to defend.  In the alternative, Nationwide seeks partial summary judgment on the following grounds: that Nationwide did not breach the insurance contract, and/or that Nationwide did not breach the implied covenant of good faith and fair dealing, and/or that plaintiffs are not entitled to recover punitive damages against Nationwide.

1.   Governing Interpretation Principles

In California, interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation.  See MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 647 (2003).  Contract interpretation, for its part, is based on the premise that it must give effect to the mutual intention of the parties.  Id.  This intent, if possible, should be inferred solely from the written provisions of the contract, as interpreted in their "ordinary

8

and popular sense." Id. at 648. The exception to this "ordinary and popular" rule, is where the parties have used a given term in a "technical sense" or where a "special meaning" is given to a term "by usage." Id. In that case, the term should be read with reference to that special meaning or technical sense.

With respect to extrinsic evidence, it may be admitted to determine proper interpretation where the relevant provisions of an insurance policy are ambiguous. See Palacin v. Allstate Ins. Co., 119 Cal. App. 4th 855, 862. A policy provision is ambiguous, in turn, when it is susceptible of two or more reasonable constructions. Id.

The duty to defend has been explained by the California Supreme Court:

> Standard comprehensive or commercial general liability insurance policies provide, in pertinent part, that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for any covered claim. They also provide that the insurer has a duty to defend the insured in any action brought against the insured seeking damages for any covered claim. . . .
>
> [T]he insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed. It entails the rendering of a service, viz., the mounting and funding of a defense in order to avoid or at least minimize liability. It arises as soon as tender is made. It is discharged when the action is concluded. It may be extinguished earlier, if it is shown that no claim can in fact be covered. . . .
>
> Thus, in an action wherein all the claims are at least potentially covered, the insurer has a duty to defend.

Buss v. Superior Court, 16 Cal.4th 35, 45-46 (1997) (citations omitted).

Under California law, the duty to defend arises whenever an action alleges any claim that "potentially" or "possibly" could be covered by the policy in question. Id. A duty to defend can only be excused when the action "can by no conceivable theory raise a single issue which could bring it within the policy coverage." Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993). Any doubts as to whether the insurer has a duty to defend must be resolved in the insured's favor. George F. Hillenbrand, Inc. v. Insurance Co. of North America, 104 Cal. App. 4th 784, 800-01 (2002).

In a "mixed" action involving covered and noncovered claims, the insurer has a duty to defend the whole action. Buss, 16 Cal. 4th at 48-49. "To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not." Id. (citation omitted). "As to the claims that are not even potentially covered, however, the insurer may indeed seek reimbursement for defense costs." Id. at 50.

To determine whether claims are potentially covered, the policy language has to first be construed. Under general principles of interpretation, policy exclusions are to be strictly construed, while exceptions to exclusions are to be broadly construed in favor of the insured. Arenson v. National Auto. & Cas. Ins. Co., 45 Cal. 2d 81, 83 (1955). In addition, to the extent any language in the policy is ambiguous, the ambiguous language must be construed in favor of the insured. Id. See also Minkler v. Safeco Ins. Co., 49 Cal. 4th 315, 322 (2010) ("The 'tie-breaker' rule of construction against the insurer stems from the recognition that the insurer generally drafted the policy and received premiums to provide the agreed protection.")

2. Coverage

With these principles in mind, the first issue to be decided is whether the policy, in its affirmative coverage provisions (i.e., the provisions covering property damage liability), covers the claims asserted in the homeowners' complaint. Under California law, coverage must be first determined with respect to the affirmative insuring provisions of the policy, not the exclusions. See, e.g., Waller v. Truck Ins. Exch., 11 Cal. 4th 1, 16 (1995) ("Before 'even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within [the policy terms].'").

Coverage is normally determined by comparing the allegations of the third party complaint with the coverage language of the policy. See, e.g., Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109, 1115-16 (1999). Accordingly, here the court must compare the coverage clauses of the policy with the allegations of the homeowners' complaint, summarized as follows:

- Each defendant was the agent of each other defendant. Def. Ex. F. ¶ 11.
- Swi-Co breached its contract by "constructing the entire residence approximately 10 feet off from the designed and staked out location; grading the driveway and other areas around the residence approximately two feet higher than called for under the plans and specifications; grading the driveway and other areas sloped toward the residence rather than being sloped away from the residence as called for under the plans and specifications; and constructing the residence in the physical area designated for the septic system setback. Id. ¶ 14.
- As a result of the deviation from the approved plans and specifications and other material breaches of the contract by the defendants, the residence suffers from water intrusion throughout the crawl space beneath the home, water damage to sub-flooring, structural members and framing members, significant mold growth on structural framing as well as other components of the home. Id.
- The negligence of Swi-Co, Farrell-Faber (the architect), LaFranchi (civil engineering corporation), PJC Associates (geotechnical engineering corporation), Johnson-Dubois (structural engineering firm), and Kelly Johnson (individual structural engineer) caused damages including expenses for mold remediation, correction of grading defects, relocation of septic field, inspecting and testing. Id. ¶¶ 36-38.

The policy covered "property damage" to the property of others caused by Swi-Co's work, unless that damage fell within an exclusion. Nationwide concedes that on its face, the allegations of the homeowners' complaint alleging damage to their house are sufficient to bring Swi-Co's claim within the scope of the policy's insuring agreement. Doc. no. 36 at 4. The parties dispute whether the homeowners' claims fell within the exclusions to the policy coverage.

11

3. Exclusions

California law recognizes "the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." State Farm Mut. Auto. Ins. Co. v. Jacober, 10 Cal. 3d 193, 201 (1973). An insurer must state "'any exception to the performance of the basic underlying obligation . . . [so] as clearly to apprise the insured of its effect.'" Id. (quoting Gray v. Zurich Insurance Co., 65 Cal. 2d 263, 269 (1966)). Exclusionary language must be "'conspicuous, plain and clear.'" Id. at 202 (quoting Steven v. Fidelity & Casualty Co., 58 Cal. 2d 862, 878 (1962)) (emphasis added in original).

Nationwide contends that the homeowners' claims fell within three different exclusions from the policy: damage arising from ongoing operations ("j5"); property that must be restored, repaired or replaced ("j6"); and mold.

a. Exclusion j5 for ongoing operations

Under exclusion j5, the policy excludes property damage arising out of the insured's ongoing operations: "This insurance does not apply to . . . [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Def. Ex. A at 100014, 100016-17.

Nationwide declined coverage under this exclusion based on its conclusion that the problems stemming from the water intrusion and development of mold occurred while Swi-Co and/or its subcontractors were performing operations. Nationwide concluded that because the project was not completed, Swi-Co's operations were ongoing and therefore excluded from coverage under j5. Def. Ex. M at 6 ("These exclusions [j5 and j6] apply to the damages claimed in this suit, because the plaintiffs' home was 'your work,' and the alleged water intrusion and/or mold damage occurred before your operations were completed.")

There is no genuine dispute that Swi-Co had not completed the construction project to build the home at the time it discovered the water intrusion and mold. The notice of

12

completion filed with the county recorder's office indicates that the project was completed on September 8, 2006.  Def. Ex. C.  The parties dispute whether as a matter of law j5 should be interpreted to exclude coverage for a general contractor for any project that has not been completed in full.  Nationwide contends that because Swi-Co was the general contractor on the project, "**all of the work at the project** is its work product."  Doc. no. 23 at 12 (emphasis in original).  Plaintiffs, however, argue that the j5 exclusion involves only part of real property ("[t]hat particular part") that is damaged when an insured or its contractor or subcontractor is contemporaneously working on it.

Following state court decisions construing exclusionary language that is similar to language in the j5 exclusion at issue here, the court determines that the j5 exclusion is ambiguous as to whether the work excluded under j5 incorporates the entire project or only a part or component of the project.  See Eichler Homes, Inc. v. Underwriters at Lloyd's, London, 238 Cal.App.2d 532 (1965); Blackfield v. Underwriters at Lloyd's, London, 245 Cal.App.2d 271 (1966); Owens Pacific Marine, Inc. v. Insurance Co. of North America, 12 Cal.App.3d 661 (1970).  In Eichler, several homeowners sued the builder for damages resulting from the rupture and leakage of the heating systems installed in the concrete floors of the homes.  The builder sued its insurer which had denied coverage and defense of the homeowners' actions.  The court held that the policy exclusion "[f]or damage to **that particular part** of any property upon which the Assured is or has been working caused by the faulty manner in which the work has been performed" was limited to damages related to the cost of repair and replacement of the defective heating system.  238 Cal. App. 2d at 534, 538 (emphasis added).  The Eichler court held that insurer had a duty to defend the builder against the third party claims for damage to the home allegedly caused by a defective heating system which "developed numerous leaks and large portions of the floor had to be torn up in order to repair the same".  Id. at 537 (emphasis added in original).

In Blackfield, homeowners sued the builders and sellers of a tract of homes for defective construction.  The insurer filed a declaratory relief action to determine its obligation to defend the builder.  The court held that the policy exclusion "[f]or damage to

13

**that particular part** of any property upon which the Assured is or has been working caused by the faulty manner in which the work has been performed" does not exclude liability for damages <u>unrelated</u> to the cost of such repair or replacement. 245 Cal. App. 2d at 275-76 (emphasis in bold added). <u>Blackfield</u> held that the insurer's attempt to extend the exclusion "to damage to the whole house, including the nondefective parts thereof, on the theory that it is property upon which the [builders] had worked" was "an unreasonable interpretation of the provision." <u>Id</u>. at 276.

In <u>Owens Pacific</u>, the insured boat seller sold a boat installed with a water heater which exploded. The customer sued the insured boat seller, and the insurer disclaimed coverage under the insured's comprehensive liability policy and refused to defend the lawsuit. After judgment was entered against the insured, he filed a declaratory relief action against the insurer. The insured incurred $2,857.52 in defense costs and $15,922.11 in damages; the record does not disclose the basis of liability. The insurer argued that the exclusion clause, for "injury to or destruction of any goods [or] products . . . sold, handled or distributed . . . by the named insured, or work completed by or for the named insured, out of which the occurrence arises," would apply to everything which the insured sold or distributed. 12 Cal. App. 3d at 666. The court of appeal affirmed judgment for the insured boat seller, holding that the exclusion was limited to the faulty water heater and did not apply to the entire boat in which the heater was installed. Following <u>Eichler</u> and <u>Blackfield</u>, the court held that the exclusion clause "is reasonably susceptible of the interpretation that the electric hot water heater [rather than the boat as a whole] was the 'product' out of which the occurrence arose." <u>Id</u>. at 667-68.

Nationwide relies on <u>Western Employers Ins. Co. v. Arciero & Sons, Inc.</u>, 146 Cal. App. 3d 1027 (1983) to argue that the j5 exclusion should be construed to deny coverage to a general contractor for damage to the unfinished project because the entire project is considered Swi-Co's work. In <u>Arciero</u>, the court affirmed summary judgment for the insurer on the ground that the damage to the condominium units, slope and wall were outside the coverage of Arciero's policy by reason of an exclusion for "property damage to work

14

performed by or on behalf of the named insured arising out of the work or any portion thereof . . . ." Nationwide contends that the policy exclusion in Arciero was similar to the j5 exclusion at issue here because it made no reference to faulty or defective work, unlike the exclusions at issue in Blackfield and Owens Pacific. Doc. no. 49 at 2-3. However, the Arciero court did not distinguish the exclusions at issue in those earlier cases on the ground that they referred to faulty work, but on the ground that those exclusions were ambiguous as to "whether the 'work' excluded was the entire project, i.e., the home or the boat, or only the component part of the project that failed, i.e,., the foundation or the electric heater." 146 Cal. App. 3d at 1031. In Arciero, the court recognized that the earlier decisions in Eichler and Blackfield, which construed exclusionary language concerning "damage to that particular part" that is similar to the language in the j5 exclusion at issue here, only excluded damages to the failed work itself, not to the entire project. 146 Cal. App. 3d at 1030-31 (citing Eichler, 238 Cal.App.2d 532; Blackfield, 245 Cal.App.2d at 273, 276 n.1). By contrast, the work product exclusion at issue in Arciero, excluding coverage for property damage arising out of "the work or any portion thereof," was drafted to eliminate the ambiguity of the earlier exclusionary provisions to make clear that it applied to the insured's entire work product. Id. at 1031. The j5 exclusion at issue here does not contain such unambiguous exclusionary language.

      Although Eichler, Blackfield and Owens Pacific do not offer thorough analysis of the question whether the whole project is considered the work of the general contractor, these state court opinions recognized that the exclusionary language created an ambiguity as to whether the work excluded was the entire project or only the component part of the project that failed. Because any ambiguity must be resolved against the insurer, the court held in each of those cases that the work product exclusion excluded only damages to the failed work itself, not to the entire project. See Arciero, 146 Cal. App. 3d at 1031-31. Under Eichler, Blackfield and Owen, Swi-Co's proposed construction of the j5 exclusion, to exclude only damage to a particular part of construction on which the contractor is performing operations and not to the whole house until the entire project is complete, is

15

reasonable and supported by the ordinary and plain meaning of the exclusionary language. Construing the ambiguous language of the j5 exclusion against the insurer, the court determines that the j5 exclusion does not apply here to the entire construction project.

With respect to Nationwide's motion for summary judgment on the ground that it owed no duty to defend pursuant to the j5 exclusion, the motion is DENIED. Pursuant to Civil Local Rule 56-3, the court hereby specifies that the court's interpretation of the j5 exclusion is deemed established for purposes of trial of this case.

b. <u>Exclusion j6 for "restored, repaired or replaced" Property</u>

Exclusion j6 excludes coverage for "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Def. Ex. A at 100017. The parties dispute whether plaintiffs' vicarious liability for the alleged negligence by the architect and engineers hired by the homeowners is covered by "your work." Nationwide contends that all of the work on the project is considered the work of Swi-Co as the general contractor. As discussed above with respect to the j5 exclusion, Nationwide fails to show that such a broad construction of "your work" to encompass the entire project is the only reasonable one. The court therefore finds that the j6 exclusion does not apply to the work of others, such as architects and engineers, who are not subcontractors of Swi-Co.

Nationwide argues that the allegations of the homeowners' complaint establish that certain portions of the project had to be restored, repaired or replaced because Swi-Co's work was allegedly incorrectly performed. Doc. no. 23 at 13. The question whether Swi-Co's work was incorrectly performed and caused the property damage presents a disputed issue of fact. Even Nationwide's in-house attorney admitted at deposition that "assuming the grading and siting were not the insured's work, then [j6] may or may not apply." Declaration of Mark L. Sherman ("Sherman Decl."), Ex. 2 (Ochsner Depo.) at 55.

Swi-Co identifies another disputed factual issue over which particular part of the property, if any, had to be restored, repaired or replaced. Doc. no. 33 at 19. Swi-Co contends that the homeowners' complaint does not allege that Swi-Co performed incorrect

16

operations on the components of the house that needed replacement, including saturated insulation, parts of the subfloor, pipes, HVAC and other duct work. Id. Nationwide does not respond to Swi-Co's argument that this issue presents a factual dispute.

The court determines that the question whether Swi-Co, the architects or the engineers incorrectly performed their work raises genuine issues of disputed fact as to whether the j6 exclusion applies to the claimed damage. Nationwide's motion for summary judgment on the ground that it owed no duty to defend pursuant to the j6 exclusion is therefore DENIED. Pursuant to Civil Local Rule 56-3, the court hereby specifies that the court's interpretation of the j6 exclusion not to apply to the work of others who are not Swi-Co's subcontractors is deemed established for purposes of trial on the remaining question of whether the j6 exclusion applies to the claimed damage.

### c. Exclusion for Mold

As Nationwide has demonstrated, the policy plainly and clearly excludes damage arising from the presence of mold: "Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity." Def. Ex. A at 100043.

Plaintiffs have demonstrated, however, that the homeowners' claims against Swi-Co alleged damage other than mold, presenting a factual dispute as to whether any part of the claim against Swi-Co is potentially covered, triggering Nationwide's duty to defend. See doc. no. 33 at 21. In reply, Nationwide does not dispute plaintiffs' contention that the homeowners alleged other non-mold damage. Nationwide's litigation consultant also acknowledged at deposition that the mold exclusion would not apply to the allegations of non-mold damage. Sherman Decl., Ex. 3 (Malone Depo.) at 34 ("The mold exclusion only applies to allegations relating to mold."). Nationwide's motion for summary judgment is therefore DENIED with respect to the plaintiff's breach of contract claim based on the duty to defend against claims for non-mold damage.

     4.     Motion for Partial Summary Judgment

Nationwide seeks partial summary judgment as to plaintiffs' claim for breach of contract, breach of the implied covenant of good faith and fair dealing and prayer for punitive damages. Nationwide's motion for summary judgment as to the claim for breach of contract is DENIED, as fully set forth above. With respect to the other claim and prayer for relief, Nationwide's motion for summary judgment is GRANTED.

A claim for breach of implied covenant of good faith and fair dealing for denial of liability coverage requires the following two elements: "(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1151 (1990). "Where benefits are withheld for proper cause, there is no breach of the implied covenant." Id. at 1151. Although the court has construed the ambiguity of the exclusionary provisions in favor of the insured, this ruling does not take the claim out of the reach of the genuine dispute doctrine. See Trishan Air, Inc. v. Federal Ins. Co., 635 F.3d 422, 434 (9th Cir. 2011) ("An insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.") (citation and quotation marks omitted). In light of the genuine dispute over coverage and the applicability of the exclusions, plaintiffs fail to demonstrate bad faith to support a claim for breach of the implied covenant. Nationwide's motion for partial summary judgment on this claim is therefore GRANTED.

With respect to plaintiffs' prayer for punitive damages, plaintiffs must prove by clear and convincing evidence that Nationwide has been guilty of malice, fraud, or oppression. Cal. Civ.Code § 3294. "Clear and convincing evidence" is evidence that is "so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind." In re Angelia P., 28 Cal. 3d 908, 919 (1981). The law does not favor punitive damages, and they should be granted with caution. Given the genuine dispute over coverage, plaintiffs fail to demonstrate that Nationwide denied coverage

maliciously, fraudulently or oppressively. Nationwide's motion for partial summary judgment on the prayer for punitive damages is hereby GRANTED.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is DENIED with respect to the claim for breach of contract and GRANTED with respect to the claim for breach of implied covenant of good faith and fair dealing and prayer for punitive damages.

This matter is REFERRED back to Magistrate Judge Zimmerman for a further settlement conference. The parties shall contact Magistrate Judge Zimmerman's chambers for the next available date for conference. If the matter does not settle, the parties shall appear for trial setting conference on January 12, 2012 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: September 19, 2011

PHYLLIS J. HAMILTON
United States District Judge