United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SWI-CO CONSTRUCTION, INC., et al.,

        Plaintiffs,

        v.

AMCO INSURANCE COMPANY, et al.,

        Defendants.

_____/

No. C 10-3122 PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' motion for summary judgment came on for hearing before the court on March 7, 2012.   Plaintiffs Swi-Co Construction, Inc., Swi-Co Construction, and Joe Swicegood (collectively "Swi-Co" or "plaintiffs") appeared through their counsel, Marc Sherman.  Defendant Nationwide Mutual Insurance Company ("Nationwide" or "defendant") appeared through its counsel, Stephen Libertore, and Julian Pardini.  Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS plaintiffs' motion for summary judgment, for the reasons stated at the hearing, and as follows.

## BACKGROUND

This action arises out of an insurance coverage dispute.  The court previously heard and decided defendant's motion for summary judgment with respect to coverage issues. Plaintiff's corresponding motion is now before the court.

A.    Background Facts[1]

Plaintiff Swi-Co Construction is a partnership entity between general partners

_____

[1]    Much of the background facts and evidence noted herein is identical to that submitted in connection with defendant's earlier motion, and are accordingly referenced by docket number submitted in connection with those earlier submissions.

United States District Court

For the Northern District of California

1   plaintiff Joseph Swicegood and nonparty Michael Cote.  In February 2004, Swi-Co

2   contracted with non-parties Pete and Caroline Kerston (the "Kerstons") to construct their

3   home in Santa Rosa, California (the "project").  Swi-Co entered a written standard form

4   contract with the homeowners dated July 2, 2004 (the "contract").

5         The Kerstons also hired an architect and civil engineers, who were not controlled or

6   employed by Swi-Co, to determine the site of the house in relationship to a nearby creek.

7         The contract required Swi-Co to "complete the Work described in the Contract

8   Documents for the project."  See Docket No. 30, Index of Def. Exs. ("Def. Index"), Ex. B. at

9   SWI 00356.  The contract defined "Work" as "the construction and services required by the

10  Contract Documents, and includes all other labor, materials, equipment and services

11  provided by the Contractor to fulfill the Contractor's obligations."  Id. at SWI 00367.  The

12  work described in those contract documents included, among other tasks, grading, rough

13  and finish carpentry, flooring and building insulation.  Id. at SWI 00361-66.  Under the

14  heading, "Final Completion and Final Payment," the contract provided that "[u]pon receipt

15  of a final Application for Payment, the Owner will inspect the Work", and that "[f]inal

16  payment shall not become due until the Contractor submits to the Owner releases and

17  waivers of liens, and data establishing payment or satisfaction of obligations, such as

18  receipts, claims, security interests or encumbrances arising out of the Contract."  Id. at SWI

19  00370.

20        Sometime during the course of construction of the project, water was discovered in

21  the subfloor area of the house.  See Def. Index, Ex. D. at 59 (Deposition of Joe

22  Swicegood).  Swi-Co took measures to dry out the area, thinking that it was caused by

23  water from the plumbing system that had drained out into the subfloor area, but the water

24  reappeared and it was later determined that the plumbing was not the source of the water.

25  Id. at 47, 59.  The water intrusion caused problems with the subfloor, joists, insulation, and

26  the duct work for the mechanical ventilation and heating systems.  Id. at 55.

27        On October 4, 2005, when a hole was cut into the master bathroom subflooring to

28

United States District Court
For the Northern District of California

1  prepare for installation of a bathtub, mold was discovered on the underside of the

2  subflooring. Id. at 67-68; Declaration of Joe Swicegood ISO Pl. MSJ ("Swicegood Decl."), ¶

3  4. Michael Cote, Swicegood's partner in Swi-Co, "immediately contacted Nationwide to

4  make a claim" for the damage. Swicegood Decl. ¶ 4.  Cote gave a statement to

5  Nationwide's claim representative, Nancy Klein, on October 14, 2005.  Def. Ex. G.

6        By letter dated November 11, 2005, Nationwide formally denied the claim, citing

7  various policy exclusions.  Declaration of Nancy Klein ("Klein Decl.") ¶ 4 and Def. Index, Ex.

8  H.  Swicegood spoke to Ms. Klein who emphasized that the claim was denied because it

9  included mold damage.  Swicegood Decl. ¶ 4.

10  B.     The Insurance Policy

11        Defendant Nationwide[2] issued Commercial General Liability Policy No. ACP GLO

12  7880041365 (the "Policy"), effective April 8, 2005 to April 8, 2006, to plaintiff Swi-Co

13  Construction and to Joseph Swicegood and Michael Cote as a partnership entity doing

14  business as "Swi-Co Construction." See Def. Index., Ex. A at 100006, 100011.  The policy

15  renewed for the following policy year without material change.

16        The policy provides liability coverage for qualifying "bodily injury" and "property

17  damage," as follows:

18
19            "We will pay those sums that the insured becomes legally obligated
               to pay as damages because of "bodily injury" or"property damage"
20            to which this insurance applies.  We will have the right and duty to
               defend any "suit" seeking those damages.  However, we will have
21            no duty to defend the insured against any "suit" seeking damages
               for "bodily injury" or "property damages" to which this insurance
22            does not apply."

23        Def. Index, Ex. A at 10013, 100025, 100027-28.

24        The Policy also carved out a variety of exclusions from coverage.  The three

25  exclusions which are highlighted by the parties as relevant to the present motion are the j5

26  _____

27        [2]     Nationwide was erroneously named in the complaint as AMCO Insurance
     Company.  At the initial case management conference held on December 9, 2010, the parties
28  stipulated that Nationwide is the proper defendant in this action.

United States District Court

For the Northern District of California

1  exclusion; the j6 exclusion; and the exclusion for fungi or bacteria contained in the

2  endorsement to the policy.  Those exclusions preclude coverage for "damage to property"

3  as follows:

4  **j5 exclusion**.  This provision excludes coverage for "Property damage" to: "[t]hat

5  particular part of real property on which you or any contractors or subcontractors working

6  directly or indirectly on your behalf are performing operations, if the "property damage"

7  arises out of those operations...".

8  **j6 exclusion**.  This provision excludes coverage for "Property damage" to: "[t]hat

9  particular part of any property that must be restored, repaired or replaced because "your

10  work" was incorrectly performed on it...".

11  **Fungi/bacteria exclusion**.  In a modifying endorsement added to the insurance

12  contract, this exclusion states that "[t]his insurance does not apply to:

13  (a)  "Bodily injury" or "property damage" which would not have
    occurred, in whole or in part, but for the actual, alleged or threatened
14  inhalation of, ingestion of, contact with, exposure to, existence of, or
    presence of, any "fungi"or bacteria on or within a building or
15  structure, including its contents, regardless of whether any other
    cause, even, material or product contributed concurrently or in any
16  sequence to such injury or damage; and

17
    (b) Any loss, cost or expenses arising out of the abating, testing for,
18  monitoring, cleaning up, removing, containing, treating, detoxifying,
    neutralizing, remediating or disposing of, or in any way responding to,
19  or assessing the effects of, "fungi" or bacteria, by any insured or by
    any other person or entity.
20

21  See Def. Index, Ex. A at 100016-17, 100043.

22  Finally, the Policy included the following relevant definitions:

23  "**Your work**."  This term is defined to mean " 1) Work or operations performed by

24  you or on your behalf; and 2) Materials, parts or equipment furnished in connection with

25  such work or operations...".  See Def. Ex. A at 10013, 100025, 100027-28.

26  C.  The Kerston Action

27  In May 2006, the underlying homeowners – the Kerstons – filed suit against Swi-Co

28

4

1  Construction, Inc., as well as the architect and engineers who were involved in the project.

2  The homeowners alleged claims for breach of contract, breach of express warranty, breach

3  of implied warranty, negligence, and negligence per se against Swi-Co Construction, Inc.

4  Def. Index, Ex. F.  The Kerstons alleged that the site had been improperly graded, water

5  intrusion had damaged subflooring and structural and framing members, and mold had

6  damaged components of the home.  Id. at 200003-04.  The homeowners further alleged

7  that they had been damaged by an ongoing obligation to pay Swi-Co $8,000 for "overhead

8  and supervision" and by ongoing loss of the use of the residence.  Id. at 200005.

9       On June 6, 2006 Swi-Co tendered defense of the homeowners' action to

10  Nationwide.  The claim was then assigned to litigation consultant Greer Malone to

11  determine whether Nationwide had any coverage obligation to defend Swi-Co.  Ms. Malone

12  sought advice from in-house counsel with respect to Swi-Co's tender of defense.  Barbara

13  Ochsner, one of Nationwide's in-house attorneys, directed Ms. Malone to contact Michael

14  Cote to learn whether the construction project had been completed.  Def. Index, Ex. J.  Ms.

15  Malone spoke to Mr. Cote and noted in her file diary that Mr. Cote told her that "the

16  construction on the house is not complete as the floor coverings have not been installed &

17  cannot be installed until the mold problem is resolved.  Id., Ex. K.  Ms. Malone reported to

18  Ms. Ochsner about her telephone conversation with Mr. Cote, and Ms. Ochsner

19  recommended that Nationwide deny coverage.  Id., Ex. L.

20       On August 18, 2006, Ms. Malone sent a denial letter to Joe Swicegood of Swi-Co,

21  declining Swi-Co's tender of defense in the [Kerston] homeowners' lawsuit.  Def. Index, Ex.

22  M.  Mr. Swicegood subsequently spoke to Ms. Malone and informed her that more than

23  mold was involved in the claims: the damage included saturation to insulation and

24  degradation of pipes, HVAC and other duct work that needed to be replaced.  Mr.

25  Swicegood contends that no Swi-Co operations were occurring on the subfloor, ducts,

26  piping and other locations on which water damage was alleged.

27       Swi-Co entered a settlement with the homeowners after paying over $60,000 of

28

United States District Court
For the Northern District of California

1   company funds to defend the action.  As part of the settlement, Swi-Co paid remediation

2   costs, cancelled a $101,000 promissory note owed by the homeowners, waived over

3   $100,000 in unpaid invoices and interest, and paid its own attorneys' fees and costs.  The

4   Swi-Co partnership dissolved by the time of the settlement.

5   D.      Procedural History

6          Plaintiffs filed this action against defendant Nationwide in the Superior Court for

7   Sonoma County on June 21, 2010.  Defendant removed the action to this court on July 16,

8   2010.  On August 30, 2010, plaintiffs filed a first amended complaint ("FAC") which alleges

9   two causes of action against defendant: (1) breach of contract for failure to defend Swi-Co

10  in the [Kerston] homeowners' action under the policy; and (2) breach of the implied

11  covenant of good faith and fair dealing.  See FAC.  Each of these causes of action revolves

12  around the fundamental question whether the [Kerston] homeowners' claims were covered

13  by the policy.

14  E.      The Court's Prior Summary Judgment Order

15         On April 25, 2011, Nationwide filed its motion seeking summary judgment on both

16  claims, or, in the alternative, partial summary judgment.  The court held the hearing on

17  June 22, 2011, and subsequent to that, requested further briefing.

18         On September 19, 2011, the court issued its ruling granting summary judgment in

19  part and denying it in part.  See generally MSJ Order.  After reviewing the relevant and

20  applicable legal principles, the court first considered whether the policy affirmatively

21  provided coverage for the claims asserted in the Kerston action.  The court compared the

22  language of the Policy with the allegations of the Kerston complaint, and noted that

23  Nationwide had conceded that "on its face, the allegations of the homeowners' complaint

24  alleging damage to their house are sufficient to bring Swi-Co's claim within the scope of the

25  policy's insuring agreement."  See MSJ Order at 11.  The parties' dispute as to coverage

26  therefore boiled down to whether any of the three relevant exclusions – the j5 exclusion, j6

27  exclusion, or mold exclusion – applied.

28

United States District Court

For the Northern District of California

1    Turning to the j5 exclusion – which excluded coverage for property damage arising

2  out of the insured's ongoing operations – the court noted that there was no genuine dispute

3  that Swi-Co had not completed the construction project to build the home at the time the

4  water intrusion and mold damage was discovered.  In other words, there was no dispute

5  that the water intrusion and mold development occurred while plaintiffs and/or their

6  subcontractors were performing 'ongoing operations' on the property as a whole.  See MSJ

7  Order at 12.  However, the parties disputed whether, as a matter of law, the j5 exclusion

8  excludes coverage for any and all property damage occurring on the property before the

9  insured has completed all of its work on the property as a whole, or whether it just excludes

10  coverage for property damage that occurs as a result of a particular isolated project that the

11  insured is working on and has not yet completed.

12    The court determined that the j5 exclusion is ambiguous as to whether the work

13  excluded under j5 incorporates the entire project, or only a part or component of the

14  project.  In so ruling, the court discussed and relied upon three California cases that had

15  construed similar exclusions: Eichler Homes v. Underwriters at Lloyd's, 238 Cal. App. 2d

16  532 (1965); Blackfield v. Underwriters at Lloyd's, 245 Cal. App. 2d 271 (1966); and Owens

17  Pacific Marine, inc. v. Insurance Co. of North America, 12 Cal. App. 3d 661 (1970).

18    Those cases, noted the court, recognized that exclusionary language that was

19  similar to that contained in the j5 exclusion here created an ambiguity as to whether the

20  work being excluded under the policy was the entire project, or only the component part of

21  the project that failed.  And because any ambiguity must be resolved against the insurer,

22  the earlier court cases held that the "work product exclusion" excluded only damages to the

23  failed work itself, not to the entire project.  Following this reasoning, the court concluded

24  that plaintiffs's proposed construction of the j5 exclusion – to exclude only damage to a

25  particular part of construction on which the contractor is performing operations and not to

26  the whole house until the entire project is complete – was reasonable and supported by the

27  ordinary and plain meaning of the exclusionary language.  Thus, in construing the

28

**United States District Court**
For the Northern District of California

1   ambiguous language of the j5 exclusion, the court held that it does not apply to the entire

2   construction project, and Nationwide's motion for summary judgment on the ground that it

3   had no duty to defend pursuant to the j5 exclusion was denied.  See MSJ Order at 15-16.

4         Turning to the j6 exclusion – which precluded coverage for "that particular part of

5   any property that must be restored, repaired or replaced because 'your work' was

6   incorrectly performed on it" – the court noted that the parties disputed whether plaintiffs'

7   vicarious liability for the alleged negligence by the architect and engineers hired by the

8   Kerstons is covered by "your work."  The court found, however, that for similar reasons to

9   those discussed in connection with the j5 exclusion, the j6 exclusion does not apply to the

10  work of others, such as architects and engineers, who are not subcontractors of Swi-Co or

11  otherwise under plaintiffs's direction.  MSJ Order at 16.

12        The court then noted that, although Nationwide argued that the allegations of the

13  Kerston complain established that certain portions of the project had to be restored,

14  repaired or replaced because Swi-Co's work was allegedly incorrectly performed, the

15  question whether Swi-Co's work was in fact incorrectly performed and caused the property

16  damage was a disputed issue of material fact.  The court further noted that Swi-Co pointed

17  out that another disputed factual issue existed over which particular part of the property, if

18  any, had to be restored, repaired, or replaced – a contention to which Nationwide did not

19  respond.  For these reasons, the court determined that the "question whether Swi-Co, the

20  architects or the engineers incorrectly performed their work raises genuine issues of

21  disputed fact as to whether the j6 exclusion applies to the claimed damage."  The court

22  then denied Nationwide's motion for summary judgment on the ground that it owed no duty

23  to defend pursuant to the j6 exclusion, but specified that its ruling that the j6 exclusion does

24  not apply to the work of others who are not plaintiffs' subcontractors, is deemed established

25  for purposes of trial.  MSJ Order at 17.

26        Finally, with respect to the mold exclusion, the court noted that the policy plainly and

27  clearly excludes damages arising from the presence of mold, but held that plaintiffs had

28

1   demonstrated that the Kerston complaint alleged damage other than mold, presenting a

2   factual dispute as to whether any part of the claim against plaintiffs is potentially covered,

3   thereby triggering Nationwide's duty to defend.  The court also denied Nationwide's motion

4   with respect to the duty to defend against claims for non-mold damage.  MSJ Order at 17.

5        While the court thus denied Nationwide's motion for summary judgment with respect

6   to the breach of contract/duty to defend claim, for all the foregoing reasons, the court

7   subsequently went on to grant Nationwide's motion for summary judgment as to plaintiffs'

8   claim for the breach of the implied covenant of good faith and fair dealing.  The court also

9   granted Nationwide's motion with respect to plaintiffs' prayer for punitive damages.  MSJ

10   Order at 18-19.

11   F.   The Instant Motion

12        Following defendant's motion for summary judgment, and because the court noted

13   at the hearing on defendant's motion that the case would still be viable absent plaintiffs'

14   own motion for summary judgment allowing the court to dispose of the issues presented,

15   plaintiffs filed the present motion.

16        In it, plaintiffs seek summary judgment with respect to the remaining breach of

17   contract claim alleged in its complaint.  Namely, plaintiffs seek a ruling that it is entitled to

18   judgment with respect to its claim that Nationwide breached its duty to defend.

19                                    **DISCUSSION**

20   A.   Legal Standards

21        Summary judgment shall be granted if "the pleadings, depositions, answers to

22   interrogatories, and admissions on file, together with the affidavits, if any, show that there is

23   no genuine issue as to any material fact and that the moving party is entitled to judgment

24   as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of

25   the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to

26   a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

27   verdict for the nonmoving party.  Id.  The court must view the facts in the light most

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   favorable to the non-moving party and give it the benefit of all reasonable inferences to be

2   drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

3   587 (1986).

4        The party moving for summary judgment bears the initial burden of demonstrating

5   the absence of a genuine issue of fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317,

6   323 (1986).  When the moving party will have the burden of proof on an issue at trial, it

7   must affirmatively demonstrate that no reasonable trier of fact would find other than for the

8   moving party.  On an issue for which the nonmoving party will have the burden of proof at

9   trial, the moving party need only point out "that there is an absence of evidence to support

10  the nonmoving party's case."  Id.  Once the moving party satisfies its initial burden, the

11  nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set

12  forth specific facts showing that there is a genuine issue for trial."  FRCP 56(e).  If the

13  nonmoving party fails to make this showing, "the moving party is entitled to judgment as a

14  matter of law."  Celotex, 477 U.S. at 323.

15  B.     Legal Analysis

16       Plaintiffs' motion for summary judgment raises two overriding issues for disposition:

17  (a) whether plaintiffs are entitled to a judgment that Nationwide breached its duty to defend

18  plaintiffs against the claims asserted in the underlying Kerston action; and (b) if so, whether

19  there is any dispute as to plaintiffs' resulting damages.  As already noted by the court in

20  connection with defendant's earlier motion for summary judgment, the duty to defend arises

21  whenever an action alleges any claim that "potentially" or "possibly" could be covered by

22  the policy in question.  Buss v. Superior Ct., 16 Cal. 4th 35, 45-46 (1997).  Furthermore,

23  any doubts as to whether the insurer has a duty to defend must be resolved in the insured's

24  favor.  George F. Hillenbrand, Inc. v. Ins. Co. of N. Am., 104 Cal. App. 4th 784, 800-01

25  (2002).

26       Preliminarily, the court addresses the scope of the present motion, in view of its prior

27  order addressing defendant's motion for summary judgment.  Plaintiffs contend that the

28

**United States District Court**
For the Northern District of California

1  court's prior order already determined that exclusion j5 is ambiguous, such that a

2  construction in plaintiffs' favor was appropriate, and furthermore that the mold exclusion

3  does not apply, thereby leaving only one issue for substantive resolution here: whether the

4  j6 exclusion applies to preclude coverage for the Kerston allegations.[3]  Defendant,

5  however, seeks to re-argue the meaning and applicability of exclusion j5 in addition to

6  exclusion j6, and furthermore seeks a determination that no affirmative coverage should

7  result in the first instance.

8      As stated at the hearing on plaintiffs' motion, the court declines defendant's invitation

9  to reconsider those items which it has already ruled upon.  Furthermore, although

10  defendant explains its failure to seek reconsideration earlier on grounds that plaintiffs'

11  motion was filed before defendant had a chance to do so, the court finds this an insufficient

12  excuse to discharge defendant's responsibility to seek formal reconsideration pursuant to

13  applicable local rules.  Moreover, and no doubt because defendant has pressed its

14  reconsideration argument by way of the instant motion rather than through a more

15  appropriate motion for reconsideration, the majority of the arguments defendant makes

16  were not only already argued by defendant in its original motion and in the supplemental

17  briefing to that motion, but have also been set forth without any attempt to distinguish for

18  the court any additional law or facts that might warrant affirmative reconsideration of the

19  court's prior ruling.

20      All of which compels the court to confirm that its prior ruling in connection with issues

21  raised in defendant's motion for summary judgment will be treated as law of case, and

22  control the discussion here where applicable.

23      With this understanding in mind, the court turns to the following substantive

24  contentions raised by plaintiffs: (1) that Nationwide has conceded that the Kerston

25  complaint's allegations fall within the definition of affirmative coverage; (2) that the mold

26  ───────────────

27      [3]    Plaintiffs have moved for summary judgment on the grounds already ruled upon,
but essentially contend that entry of summary judgment in their favor is appropriate on these
grounds without need of substantive discussion, in light of the court's prior ruling.

28

United States District Court

For the Northern District of California

1  exclusion does not apply; (3) that the j5 exclusion does not apply; (4) that the j6 exclusion

2  does not apply; and (5) that it is undisputed that plaintiffs suffered damages in the amount

3  of $301,334.41.

4        1.      Coverage

5        With respect to the question of affirmative coverage, the court's prior order

6  previously considered whether the underlying Policy "covers the claims asserted in the

7  homeowners' complaint." See MSJ Order at 10.  The court's decision reviewed the

8  allegations of the Kerston complaint, and furthermore noted that "Nationwide concedes that

9  on its face, the allegations of the homeowners' complaint alleging damage to their house

10 are sufficient to bring Swi-Co's claim within the scope of the policy's insuring agreement,"

11 before concluding that a finding of affirmative coverage was appropriate.  MSJ Order at 11.

12       This holding still controls.  Although defendant now asserts that it made no such

13 concession, and that plaintiffs' contention that the Kerston complaint alleges damages

14 caused by independent third parties precludes liability – and therefore, affirmative coverage

15 – for plaintiffs, the fact remains that Nationwide did concede, at the time the issue of

16 affirmative coverage was first raised, that the Kerston complaint's allegations fell within the

17 coverage provisions of the Policy.  Moreover, however, even if the court were to revisit this

18 argument, defendant's position is unpersuasive.  It is undisputed that the Kerston complaint

19 does allege that plaintiffs, as well as third parties, are responsible for causing property

20 damage to the home.  See Swicegood Decl., Ex. B at ¶¶ 11, 14, 36-38. While defendant

21 posits, based on plaintiffs' argument here, that plaintiffs had no legal obligation to pay any

22 third parties for their independent conduct based on the Kerston complaint's allegations, no

23 such determination could have been made until the liability issues were resolved in

24 Kerston.  Yet as plaintiffs correctly point out, an insurer's duty to defend is determined at

25 the outset of litigation by the allegations of the complaint, and the *possibilities* that it raises

26 with respect to coverage.  See Montrose v. Super. Ct., 6 Cal. 4th 287, 296 (1993).  Thus,

27 for purposes of determining affirmative coverage vis a vis the duty to defend, defendant's

28

12

United States District Court

For the Northern District of California

1  argument that the court should depart from its prior ruling that affirmative coverage has

2  been established, is unavailing.

3           2.      Mold Exclusion

4           Turning to the question whether the mold exclusion applies, the court's prior order

5  held that plaintiffs had demonstrated that the Kerston complaint's allegations alleged

6  damage other than mold, triggering a factual dispute as to whether any part of the claim

7  against Swi-Co is potentially covered, and furthermore triggering Nationwide's duty to

8  defend (since there was at least the "possibility" that coverage resulted for non-mold

9  claims). See MSJ Order at 17.  Accordingly, to the extent plaintiffs seek summary

10  judgment on grounds that the mold exclusion did not excuse Nationwide's duty to defend,

11  plaintiffs' motion is GRANTED.

12           3.      j5 Exclusion

13          Similarly, plaintiffs also rely on the court's prior ruling concluding that exclusion j5 is

14  ambiguous, that it should therefore be interpreted in the insured's favor, and that plaintiffs'

15  proposed construction – i.e., that the j5 exclusion does not apply to the entire construction

16  project – is reasonable and consistent with the plain and ordinary meaning of the language.

17  See MSJ Order at 15-16 ("[p]ursuant to Civil Local Rule 56-3, the court hereby specifies

18  that the court's interpretation of the j5 exclusion is deemed established for purposes of trial

19  of this case").  As already noted, there is no justification for departing from the court's prior

20  holding.  Thus, and applying the court's prior ruling here, the court concludes here that

21  exclusion j5 does not operate to exclude coverage, and can provide no basis for a refusal

22  to defend.  Plaintiffs' motion for summary judgment with respect to the inapplicability of

23  exclusion j5 is accordingly GRANTED.

24           4.      j6 Exclusion

25          As plaintiffs note, the true substantive issue for the court to resolve is whether the j6

26  exclusion applies.  Exclusion j6 excludes coverage for "[t]hat particular part of any property

27  that must be restored, repaired or replaced because 'your work' was incorrectly performed

28

United States District Court

For the Northern District of California

1  on it." Def. Index, Ex. A at 100017. Previously, the parties disputed whether plaintiffs'

2  alleged vicarious liability for the purported negligence by the architect and engineers hired

3  by the Kerston homeowners (as alleged in the Kerston complaint) was covered by "your

4  work." Nationwide contended that all of the work at the project is considered the work of

5  Swi-Co as the general contractor, whereas plaintiffs contended that it was not. The court

6  ruled in plaintiffs' favor on this point in its MSJ Order, and furthermore noted that its

7  "interpretation of the j6 exclusion not to apply to the work of others who are not Swi-Co's

8  subcontractors is deemed established for purposes of trial" on the question whether the j6

9  exclusion applies to the claimed damage.

10        Based on the foregoing, as long as the Kerston complaint alleges that plaintiffs were

11  responsible for the work performed incorrectly by others – including the architect and

12  engineers who were hired by Kerston and not by plaintiffs – then exclusion j6 does not

13  apply, and can provide no basis for Nationwide's refusal to defend.

14        In support of the argument that the Kerston complaint alleges work performed

15  incorrectly by others, and plaintiffs' liability therefor, plaintiffs point out: that paragraph 14 of

16  the Kerston complaint establishes that the damage for which the Kerston plaintiffs were

17  suing was due to the placement of the house and/or its grading; and that water intrusion

18  occurred and components and elements of the house were damaged because of the

19  placement and/or grading. See Swicegood Decl., Ex. B at ¶ 14. Plaintiffs further point out

20  that Swi-Co did not do the grading which the Kerstons alleged needed to be corrected;

21  rather, RCX, Mann, and the Kerstons' landscaper did, and the grading and siting design

22  was done by LaFranchi. See Swicegood Decl., ¶¶ 2, 11; Ex. J. In addition, plaintiffs also

23  note that the j6 exclusion only applies to property that must be restored, repaired or

24  replaced because an insured's work was incorrectly performed on it. Here, the Kerstons

25  indicated that they were seeking damages for cost of restoring, replacing or repairing

26  insulation, pipes, HVAC, and other duct work. Swicegood Decl., ¶ 15, Ex. M. But these

27  components were not constructed incorrectly by Swi-co – or anyone else. See id. Indeed,

28

14

United States District Court

For the Northern District of California

1  some of the components were installed by third party Furia. See id., ¶ 14, Ex. I. All of

2  which, say plaintiffs, establish that no triable dispute exists that exclusion j6 does not apply

3  to preclude Nationwide's defense duty to Swi-Co.

4          Defendant, however, points out that plaintiffs *were* responsible for the grading and

5  siting on the property. They rely on plaintiffs' mediation statement in the underlying Kerston

6  action, in which plaintiffs' counsel stated: that Swi-Co, with the assistance of its grading

7  subcontractor, built the compacted dirt building pad, and put grade beam foundations in

8  place; poured pier and grade beans; and that Mr. Swicegood (of Swi-Co's partnership)

9  obtained permission from the owners to build the house in a different location after he

10  discovered siting irregularities. See Cote Decl., Ex. A at 3, 6. Thus, if plaintiffs did

11  incorrectly perform their own work on the property, defendant asserts that exclusion j6

12  applies.

13          The parties' dispute with respect to the grading and siting performed on the property

14  – i.e., whether Swi-Co in fact performed the grading and siting work alleged to have caused

15  the damage referenced in the Kerstons' complaint, and whether any of this work was done

16  incorrectly – properly constitutes a material dispute of fact. See also MSJ Order at 17

17  (noting that "the question whether Swi-Co, the architects or the engineers incorrectly

18  performed their work raises genuine issues of disputed fact as to whether the j6 exclusion

19  applies to the claimed damage"). However, plaintiffs also contend that, even putting aside

20  the siting and grading question, the Kerstons' complaint nonetheless alleged property

21  damage covered by Nationwide's policy, since the complaint sought damages for insulation

22  and ducting installed by Furia – which plaintiffs had nothing to do with. Swicegood Decl.,

23  ¶¶ 14, 15, Exs. I, M. Defendant's argument, which is limited to the grading and siting

24  issues, does not actually dispute this fact. Thus, there is no actual dispute that at least

25  *some* of the Kerston complaints' allegations allege that plaintiffs are responsible for

26  property damage resulting from insulation and ducting work that was in fact performed by

27  others. As such, the complaint alleges at least a "possibility" that coverage would apply,

28

United States District Court

For the Northern District of California

1  which coverage would not be precluded by the j6 exclusion.  This in turn, should have

2  triggered Nationwide's duty to defend.

3      Accordingly, plaintiffs' motion for summary judgment with respect to the

4  inapplicability of exclusion j6 is GRANTED.

5      5.  Damages

6      Finally, plaintiffs argue that they are entitled to damages in the amount of

7  $301,334.41, plus prejudgment interest, as a result of their defense and settlement of the

8  Kerston action.  Plaintiffs more specifically itemize their damages amounts as follows:

9  $107,444.88 in construction costs and invoices that had not been paid by the Kerstons; a

10  $101,000.00 promissory note that Swi-Co agreed to cancel (plus another $14,886.46 in

11  interest charges on the note); remediation costs of $13,218.43; and $4,067.00 in

12  "Standards of Excellence," Interest and Attorneys Fees.  See Cote Decl., Exs. A-E.  In

13  addition, plaintiffs assert they paid $60,717.40 to defend the action.  Id., Ex. G.

14      Defendant objects to the inclusion of the promissory note's value in plaintiffs'

15  damages calculation, on grounds that plaintiffs relinquished their right to collect on the note,

16  and furthermore objects that all other components of plaintiffs' damages claim are extra-

17  contractual and barred by the court's prior entry of summary judgment on the good faith/fair

18  dealing claim.  The problem for defendant, however, is that defendant submits no

19  controlling or persuasive legal authority for its assertions.  As such, it has failed to

20  meaningfully oppose plaintiffs' argument that they are entitled to these amounts.

21  Moreover, the court is persuaded that the amounts submitted by plaintiffs do, in fact,

22  adequately correspond with the amounts that plaintiffs were required to pay or forego, in

23  order to dispose of the claims asserted against them in the underlying Kerston action.

24  Such amounts are appropriately considered as part of plaintiffs' damages claim.

25      In sum, the court concludes that plaintiffs have adequately discharged their burden

26  to demonstrate damages resulting from defendant's failure to tender a defense, and

27  summary judgment as to damages is accordingly GRANTED.

28

C.      Conclusion

For all the foregoing reasons, the court hereby GRANTS plaintiffs' motion for summary judgment on grounds that no exclusion applies to excuse defendant's failure to provide a defense in connection with the allegations of the Kerston complaint, resulting in defendant's breach of the duty to defend regarding the same.  Summary judgment is furthermore GRANTED to the extent plaintiffs seek damages in the amount of $301,334.41, plus interest.

**IT IS SO ORDERED.**

Dated: April 26, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge